### OF THE

## Territory of Arizona,

### During the Year 1886.

[Crim. No. 38.   Filed March 18, 1886.]

[S. C. 10 Pac. 359.]

THE TERRITORY OF ARIZONA, Plaintiff and Respondent, v. ANDREW H. DAVIS, Defendant and Appellant.

1. JURORS—COMPETENCY OF—IMPRESSIONS FROM RUMOR AND NEWS-PAPER ACCOUNTS—SUCH OPINION DOES NOT DISQUALIFY.—Where the opinion of the juror does not seem to be founded on any evidence at all, and is nothing more than a mere impression based upon what he has heard in the streets or read in the newspapers, such opinion can never be held to disqualify a juror at the present day

2. CRIMINAL LAW—CONTINUANCE—PRACTICE ON APPLICATION FOR—GRANTING MATTER OF DISCRETION WITH TRIAL COURT—NEW TRIAL—IMPROPER REFUSAL GROUND FOR—APPEAL AND ERROR—APPELLATE COURT WILL REVIEW ACTION OF TRIAL COURT IN REFUSING CONTINUANCE WHERE THERE IS ABUSE OF DISCRETION—STATUTE MAKES IMPROPER REFUSAL OF CONTINUANCE GROUND OF ERROR—COMP. LAWS 1877, p. 462, par. 2785, subd. 2.—Practice on application for continuance reviewed and facts held sufficient to have en-

titled defendant to continuance. A motion for a new trial based upon an improper refusal of such application for continuance should have been granted. It is settled doctrine that the right and power to grant continuances is lodged with the trial judge, but this principle is subordinate to and controlled by that other principle that, where the trial judge has been guilty of an abuse of discretion in declining or refusing to postpone a cause, an appellate court, if satisfied of that fact, may review his action, and grant a new trial. Besides the statute of this territory makes this refusal a ground of error. Statute *supra.*

3. SAME—EVIDENCE—*Res Gestae*—STATEMENTS OF DECEASED AT THE TIME OF SHOOTING.—Where the testimony shows that within two or three minutes of the time of the shooting the deceased made certain statements as to what happened such statements are a part of the *res gestae* and admissible.

4. SAME—CRIMINAL RESPONSIBILITY—INSANITY—DELIRIUM TREMENS AS DEFENSE—ALCOHOLISM MAY CAUSE INSANITY—RULE DIFFERENT FROM ORDINARY DRUNKENNESS.—A continuous and excessive use of ardent liquors may result in such a state of insanity as to relieve from criminal responsibility for acts done while in a condition of mind produced and caused by such excessive drinking. It is very different from acts produced in a state of ordinary intoxication, and must be governed by wholly different rules and principles.

5. SAME—EVIDENCE OF INSANITY FROM EXCESSIVE DRINKING ADMISSIBLE—ACTUAL DRUNKENNESS NOT NECESSARY—COMMENTS OF JUDGE ON EVIDENCE—INVASION OF PROVINCE OF JURY.—Evidence tending to show that from a continuous use of ardent spirits the mind of defendant had become weakened, and that he was suffering, at the time, from an attack of delirium tremens or alcoholism, admissible, though there was no pretense that he was actually drunk at the time of the shooting. Where such evidence was admitted by the trial court, comments by the court throughout the trial to the effect that such testimony was of no importance, without a showing that defendant was in an actual state of intoxication, was prejudicial error. This testimony was for the consideration of the jury, and to enable them to determine the condition of the mind of the defendant, at the time he fired the shot, necessary to a finding of the degree of the guilt of the defendant.

6. SAME—INSANITY—EXPERT TESTIMONY—QUALIFIED PHYSICIAN, NOT EXPERT ON INSANITY, COMPETENT TO TESTIFY AS TO EFFECT OF DRINK UPON PERSON SUFFERING FROM SPECIAL INJURIES.—Where testimony of physician, in active practice, was offered to show an injury to brain of defendant, and probable effects of alcoholism

in view of such injury, such offer should not be rejected because physician was not shown to be an expert on insanity.

7. SAME—EVIDENCE—CROSS-EXAMINATION OF DEFENDANT—NOT LIMITED TO EXAMINATION IN CHIEF—WHERE DEFENDANT VOLUNTARILY TAKES WITNESS STAND IN HIS OWN BEHALF RULES OF CROSS-EXAMINATION APPLICABLE TO ORDINARY WITNESSES GOVERN HIS EXAMINATION—STATUTE CITED COMP. LAWS 1877, p. 101, par. 408.— Cross-examination as to what defendant thought and intended to do at the time he fired the shot proper cross-examination where defendant went on the stand as a general witness in his own behalf. Under our statute, *supra,* there is no limitation that requires the cross-examination to be limited to matters about which the defendant was examined in chief. Where he voluntarily assumes the character of a witness he cannot interpose his privilege not to be compelled to testify against himself but must reply to legitimate cross-examination and *this* must be determined by the same rules applicable to the cross-examination of other witnesses

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. Reversed.

The facts are stated in the opinion.

Goodrich and Smith, for Appellant.

Clark Churchill, Atty. Gen., for Respondent.

SHIELDS, C. J.—The defendant in this case, on the eighth day of June, 1885, at a session of the district court in and for the county of Cochise, was convicted of the crime of murder in the first degree, the jury affixing thereto the death penalty. He brings the case to this court, alleging various errors both in the admission and exclusion of testimony, and in the charge of the court. It is not deemed necessary to a disposition of the case to go into any very full or detailed statement of the testimony therein, or the facts as disclosed by the testimony. It is sufficient to say that on the seventeenth day of January, 1885, the defendant shot and killed one Matthew Alexander, in the town of Tombstone. The shooting occurred upon the street on the morning of the day last mentioned. The theory of

the prosecution was that the killing was wholly without excuse, or justification, and that the defendant was guilty of murder in the first degree. Upon the trial the defense was rested upon two grounds: *First,* that the killing was done in self-defense; *second,* that the defendant was in such a state of mind, produced by a continuous and excessive use of spirituous liquors, as not to be in a condition to know what he was doing or to be responsible for his acts. It is claimed that there are certain errors applicable to the case in general, and others bearing more directly upon the defense of insanity, that it is our duty to consider. Some of these it would be unnecessary to notice were it not that the case must go back for a new trial, and it is proper we should indicate our views on them.

The assignments of error, when grouped, present the following questions: *First,* were challenges to certain jurors by the accused improperly overruled? *Second,* was there an abuse of discretion on the part of the district court in declining and refusing to continue the cause? *Third,* should the testimony offered by the defendant, as to the effect upon his mind of his habits of intoxication, have been received? *Fourth,* was there error in the instructions given? These questions will be considered in their order.

1. As to the jurors. E. D. Waffle was called as a juror, and, questioned by the defendant's counsel, testified in substance that he was in Tombstone the day of the shooting, and heard of that fact, and that he had some opinion as to the guilt or innocence of the defendant; and, in reply to questions, he stated that the opinion he had was not a fixed or unalterable one; that, notwithstanding such opinion, he could sit on the jury and give the defendant a fair and impartial trial; that he would decide the cause upon the testimony given, and not upon his former opinion or impression; and, further, that the opinion which he had formed was one that would be changed by the testimony of witnesses upon the stand. We think the juror was entirely competent to sit in the case. The opinion of the juror did not seem to be founded on any evidence at all, and was nothing more than a mere impression based upon what he had heard in the street or read in the newspapers. Such an opinion

can never be held to disqualify a juror at the present day. *Staup* v. *Commonwealth,* 74 Pa. St. 458; *Reynolds* v. *United States,* 98 U. S. 145. In this latter case the question is quite fully discussed, and the rule laid down, which we adopt as the law applicable to this territory upon this subject.

2. As to the error alleged in not continuing or postponing the trial upon the application of the defendant. The record discloses that the defendant was put upon his trial on the twenty-eight day of May, 1885; that the jury disagreed; and that during the same term, and on the eighth day of June succeeding, he was placed upon trial again, in which trial a conviction was had. The defendant in due time filed an affidavit, setting forth the absence of a material witness, and set out at great length what he expected to prove by such witness. The affidavit in substance alleged that the witness was present at the first trial of the cause, and gave testimony therein; that, after he had so testified, he left the territory and went to New Mexico to attend to business there; that, immediately upon the court setting down the cause for trial the second time, the defendant procured a subpœna to be issued, and made every proper and possible exertion to secure the attendance of the absent witness, but that it was impossible to reach him, or to have him at the trial; and setting up the circumstances attending his departure, and the fact that the defendant would have him present at the next succeeding term of court. The affidavit then proceeds and sets out at considerable length the facts the defendant expected to prove and would prove by the absent witness; among others, that upon the night before the shooting the deceased came to the house where the defendant was stopping, and attempted to break into the house, and made threats against the defendant, among others, that he would take his life; and, further, that the defendant, from the excessive use of spirituous liquors, was mentally incapacitated and weakened to such a degree as not to fully understand or be responsible for his acts or conduct. It was made to appear that the trial court had informed counsel for defendant that the defendant would not be put upon trial again during the then present term,

and also that one of the counsel for defendant who took an active and leading part in the first trial had become sick and confined to his bed at the time the case was set for trial the second time. These facts so shown we think entitled the defendant to a postponement of the trial, and the refusal of the trial court to continue the cause, under the circumstances, was such an abuse of discretion as authorizes this court to review the same and his action therein. The motion for a new trial, based on this refusal, should have been granted. We do not propose by this to interfere with the settled doctrine that the right and power to grant continuances is lodged with the trial judge, but this principle is subordinate to and controlled by that other principle that, where the trial judge has been guilty of an abuse of discretion in declining or refusing to postpone or continue a cause, this court, if satisfied of that fact, may review the action, and grant a new trial. *Churchill* v. *Alpena Circuit Judge,* 56 Mich. 536; 23 N. W. 211. Besides, the statute of this territory makes this refusal a ground of error in the supreme court. See Comp. Laws, p. 462, § 2785, par. 2, which provides in substance that an appeal may be taken to the supreme court from any order of the district court granting or refusing a new trial, or which affects a substantial right in an action or special proceeding.

3. The testimony shows that, shortly after the deceased was shot, and within two or three minutes thereafter, he was carried to a drugstore a few feet from where he was shot, and instantly made a statement to the effect that the defendant called to him to get down on his knees, and that on his refusal to do so the defendant shot him. This testimony was objected to as incompetent and hearsay, but admitted by the court. We think the testimony was clearly competent and admissible. It was clearly part of the *res gestae* and admissible. *Hurd* v. *People,* 25 Mich. 405. In *Harriman* v. *Stowe,* 57 Mo. 93, it is held that where an accident happens, and the injured party declares to the physician, called soon after the accident, how it happened, such statement is admissible in evidence. In *Commonwealth* v. *McPike,* 3 Cush. 181, 50 Am. Dec. 727, it is held that, where a person immediately escaping from an assault declares who

did it, such declaration may be received in evidence. So the declaration of the party assaulted, made immediately after the assault, showing the character of the impression made at the time on his mind in regard to the nature of the attack, is admissible. *Monday* v. *State*, 32 Ga. 672, 79 Am. Dec. 314. In the present case the testimony shows that the statements proved were made to persons who were eye-witnesses of the transaction itself and the shooting, and within two or three minutes after the shot was fired. We think the statement clearly admissible.

4. The defendant alleges error with reference to the admission of testimony as to the effect upon his mind of the continuous use of intoxicating liquors. The defendant offered testimony tending to show that from a continuous use of ardent spirits his mind had become weakened, and that he was suffering, at the time, from an attack of *delirium tremens* or alcoholism. Both legal and medical writers recognize the fact that a continuous and excessive use of ardent liquors may result in such a state of insanity as to relieve from criminal responsibility for acts done while in a condition of mind produced and caused by such excessive drinking. It is very different from acts produced in a state of ordinary intoxication, and must be governed by wholly different rules and principles. The trials of causes, as reported, show that there is no species of insanity in which the mind is so completely filled with hallucinations as that produced by this means. In the case before us the defendant claims that certain proof offered by him bearing upon this point was improperly excluded. It is said by the attorney general, in reply to this, that although in the beginning the trial judge expressed the opinion that such proof was not competent, that still the question was gone into fully by the witnesses for the defendant, who answered such questions as were put to them on that subject. We think from an examination of the record that this is so; but we find, further, that the whole effect of this testimony was destroyed by the remarks of the district judge throughout the trial, to the effect that such testimony was of no importance at all, and could effect nothing on behalf of the defendant, unless it could be shown that he was in an actual state of intoxi-

cation; in other words, that he was drunk at the time of the shooting. We are of the opinion that this was an error equally as prejudicial to the rights of the defendant as if the judge had in the first instance excluded the testimony of the defendant bearing upon this point. There was no pretense that the defendant was actually drunk at the time of the shooting, nor was it necessary that there should be. The result of an examination of the criminal cases where this defense was made, as well as an examination of the medical authorities upon the subject, show that acts of violence on the part of the victim of this unfortunate habit of alcoholism are often committed while he is recovering from his debauch. We do not, however, intimate that the facts in this case were such as to show the defendant in that condition of mind as not to be responsible for his acts, but we think he was clearly entitled to have all the facts and circumstances bearing upon his condition of mind fairly submitted to the jury who must under all these facts and circumstances, determine whether or not he was responsible for what he did. This sort of testimony was for the consideration of the jury, and with a view of enabling them to determine the condition of the mind of the defendant at the time he fired the shot. Was he, at such time, by reason of his previous habits of intoxication, rendered incapable of forming the intention, or of exercising the deliberation and premeditation, which are essential to the existence of murder in the first degree, of which the defendant was convicted? Or, upon the contrary, was his mind so broken down and destroyed as to render him incapable of forming such an intention? It was important to determine these questions, for only by so doing could the jury come to the conclusion that the offense was murder of the first or second degree or manslaughter. It was defendant's right, therefore, to have all of this testimony so offered given freely and fairly to the jury, so that from it they could pass upon the degree of the guilt of the defendant.

The defendant put upon the stand Dr. Dunn, a physician, in active practice in Tombstone, and offered to show by him an injury or depression of the skull or brain of the defendant, and the probable effect of the continuous use

of strong drink upon the defendant, in view of such depression or injury. The district judge excluded this testimony, upon the ground that the physician was not shown to have had experience in the treatment or care of insane persons, and was not an expert on the subject of insanity. We think this was error. It was perfectly competent to show by this physician the injuries offered to be proven, and what effect, in his judgment as a physician, in view of such a condition of the head and skull as described by him, the use of spirituous liquors would have upon the defendant. To entitle him to give this testimony it was not necessary that the physician should have come from an asylum, or had the care of insane patients. His position as a physician entitled him to give his experience and judgment on the matters and questions that were submitted to him.

5. Certain errors are alleged with reference to the cross-examination of the defendant, who went on the stand as a general witness on his own behalf. When upon the stand, he was cross-examined as to what he *thought* and *intended* to do at the time he fired the shot. This was clearly proper cross-examination. No question seems to have been asked beyond those indicated, and certainly the defendant could not complain so long as the questions were confined to that limit. The defendant went on the stand as a general witness in his own behalf, and testified fully as to the shooting, as well as to the circumstances occurring the night before. In view of such fact, the cross-examination might very properly have been extended beyond the point where it did actually stop, had the prosecution seen fit to pursue it further. *Stover* v. *State,* 56 N. Y. 315; *People* v. *Reinhart,* 39 Cal. 449; *People* v. *Russel,* 46 Cal. 121; *Commonwealth* v. *Price,* 10 Gray, 472, 71 Am. Dec. 668; *People* v. *Beck,* 58 Cal. 212. These California cases were under a statute which required the cross-examination to be confined to matters about which the prisoner was examined in chief. In our statute on the subject there is no such limitation. Comp. Laws, p. 101, § 408. This rule does not violate the principle that a person accused of crime shall not be compelled to testify against himself; but this is a privilege which a defendant upon trial may waive, and when he does so, and goes upon the stand as a

general witness in his own behalf, he may be examined and cross-examined, as any other witness. In such case he voluntarily assumes the character of a witness, and cannot interpose his privilege, and refuse to answer such questions as are put to him in a legitimate cross-examination, and *this* must be determined by the same rules applicable to the cross-examination of other witnesses.

This disposes of all the question raised on the trial except those alleging error in the instructions given. We do not deem it necessary, however, to consider this branch of the case.

The sentence and judgment of the court below are reversed, and a new trial granted.