NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

MARIO RAMON CHAVEZ-TAVENA, *Appellant.*

No. 1 CA-CR 12-0750
FILED 06-03-2014

---

Appeal from the Superior Court in Maricopa County
No. CR 2009-030588-001
No. CR 2009-141909-001
The Honorable Sherry K. Stephens, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Daniel R. Raynak, Attorney at Law, Phoenix
By Daniel R. Raynak
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

---

**H O W E,** Judge:

## Facts and Procedural History

¶1         Mario Ramon Chavez-Tavena appeals his convictions and sentences on five counts of sexual conduct with a minor and one count of molestation, all class 2 felonies and dangerous crimes against children, and other charges relating to his arrest for the sex offenses. For the reasons that follow, we affirm.

¶2         Chavez-Tavena's wife placed a digital recorder in the master bedroom of their home because she suspected her husband was cheating and hoped to catch him calling his mistress while she was gone. Instead, she discovered that Chavez-Tavena was molesting her 10-year-old daughter. When she confronted her daughter with the fact that she had a recording of the incident, her daughter started crying, and said, "He makes me do it." The mother testified that her daughter said she had not reported the molestation because she had seen Chavez-Tavena hurt her mother before, "and she was just scared that he would hurt [her mother] again." The mother testified that when she confronted Chavez-Tavena later that day, he denied her accusations.

¶3         At trial, the jury heard the recording memorializing the molestation. The mother identified voices on the recording as that of Chavez-Tavena and her daughter, and a rhythmic creaking sound as the sound the bed made when she and Chavez-Tavena had sex. On the recording, a person can be heard breathing heavily, and the victim can be heard twice saying "ouch" and "it hurts." The daughter confirmed at trial that while her mother was gone that day, Chavez-Tavena told her to pull her pants down, made her suck his penis, and put his penis in her vagina and moved it up and down. She testified she remembered it hurt. The prosecutor played a DVD of a forensic interview, in which the daughter recalled several additional incidents.

¶4         Chavez-Tavena testified at trial that he had never touched the victim inappropriately or engaged in any of the sex acts of which he was accused. He testified that the creaking sound on the recording was the bed moving as he rocked one of his sons to sleep, and that the victim might have said "it hurts" because she got tangled in some cords and tripped.

¶5         The jury convicted Chavez-Tavena of the charged offenses, and found that the victim was less than 12 years old at the time of the

2

sexual conduct. The superior court sentenced him to life in prison on the convictions for sexual conduct with a minor and 10 years in prison on the molestation conviction, to be served consecutively to each other, and to 2.5 years in prison on the most serious of the other charges. Chavez-Tavena filed timely notices of appeal.

## I. Challenge to Admission of the Recording

¶6 Chavez-Tavena argues that the superior court abused its discretion in rejecting his challenge to the recording on the ground it was inaudible, without first listening to the recording. We review the court's ruling on the admissibility of evidence for an abuse of discretion. *See State v. Tucker*, 205 Ariz. 157, 165 ¶ 41, 68 P.3d 110, 118 (2003). Because Chavez-Tavena failed to make this argument below, he bears the burden of demonstrating that the superior court erred, that the error was fundamental, and that he was prejudiced thereby. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005).

¶7 On this record, the superior court did not err, much less fundamentally err to Chavez-Tavena's prejudice. The superior court initially rejected defendant's challenge to the recording under Arizona Rule of Evidence 403 based solely on counsels' arguments, without having heard the recording. The court then listened to a CD duplicate of the recording before the parties agreed that the jury would hear the recording in its original form. "Whether a recording is sufficiently audible to be admitted into evidence is within the sound discretion of the trial court." *State v. Dante*, 25 Ariz. App. 150, 154, 541 P.2d 941, 945 (1975), overruled on other grounds by *State v. Hunter*, 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983). The superior court could have reconsidered its prior rejection of the Rule 403 challenge after listening to the recording, but it did not, thereby implicitly reaffirming its previous findings. Nothing in the record shows that the superior court abused its discretion, much less fundamentally erred to Chavez-Tavena's prejudice, in admitting the recording under these circumstances.

## II. Challenge to Admission of Victim's Out-of-Court Statement

¶8 Chavez-Tavena next argues that the superior court abused its discretion in admitting the victim's out-of-court statement that "he makes me do it," under the excited utterance exception to the rules prohibiting hearsay, and in violation of his right to confront the witnesses against him. When the mother showed the victim that she had recorded the incident, the victim started crying, evidencing the stress of excitement

from learning that her mother now knew what had happened. The superior court found this statement qualified as an excited utterance admissible as an exception to the hearsay rule under Arizona Rule of Evidence 803(2). This Court reviews the superior court's ruling for abuse of discretion. *See Tucker*, 205 Ariz. at 165 ¶ 41, 68 P.3d at 118.

**¶9**        A statement falls within the "excited utterance" exception to the hearsay rule if it is "relating to a startling event or condition, made while the declarant was under the stress of excitement that caused it." Ariz. R. Evid. 803(2). The exception requires proof of: "(1) a startling event, (2) a statement made soon after the event to ensure the declarant has no time to fabricate, and (3) a statement which relates to the startling event." *See State v. Bass*, 198 Ariz. 571, 577 ¶ 20, 123 P.3d 796, 802 (2000). The declarant also must have personally observed the event about which she spoke. *Id.* The "startling event" in this case was the mother's revelation that she had captured the sexual assault on a recording. The victim started crying and said "he makes me do it" immediately afterward, and the statement related to the sexual assault the victim had just learned that the mother had recorded. Under these circumstances, the superior court did not abuse its discretion in admitting the statement.

**¶10**        Nor did the admission of the statement violate Chavez-Tavena's confrontation rights. In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the admission of an out-of-court testimonial statement made by a declarant who does not testify at trial, unless the proponent can show that the author of the statement is unavailable to testify, and that defendant had a prior opportunity to cross-examine her. *Id.* at 59, 68. The out-of-court statement at issue here did not implicate Chavez-Tavena's confrontation rights because, among other things, the declarant testified at trial, affording Chavez-Tavena all that was required to satisfy his confrontation rights – an opportunity for cross-examination. *See id.*

### III.    Challenge to Preclusion of Defendant's Out-of-Court Statement

**¶11**        Chavez-Tavena argues for the first time on appeal that the superior court abused its discretion in precluding him from relaying his out-of-court statement denying his wife's accusations the day of the incident, because the statement was not hearsay and should have been admitted to complete the story under Arizona Rule of Evidence 106. We review the court's ruling on the admissibility of evidence for an abuse of discretion, *see Tucker*, 205 Ariz. at 165 ¶ 41, 68 P.3d at 118, and claims

raised for the first time on appeal for fundamental error, *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶12 The superior court neither abused its discretion nor fundamentally erred to defendant's prejudice in sustaining the prosecutor's objection. Chavez-Tavena's argument that the statement was not hearsay fails: a defendant's out-of-court statement is hearsay unless the opposing party offers it in evidence, *see* Ariz. R. Evid. 801(d), or it is admissible under some other exception to the hearsay rule. Chavez-Tavena does not argue that his statement was admissible under an exception to the hearsay rule, and no exception appears applicable. And even if his statement was somehow admissible, any error did not prejudice him, because the jury heard evidence of Chavez-Tavena's denials of his wife's accusations. His wife testified at trial that when she confronted Chavez-Tavena the day of the incident, he denied her accusations. He also testified at trial that he had never touched the victim inappropriately or engaged in any of the sex acts of which he was accused. Furthermore, the record reflects that Chavez-Tavena ultimately testified what he had said in response to his wife's accusations on redirect examination, when defense counsel informed him without objection, "You can say what you said." Chavez-Tavena then testified, "I said, what are you talking about? And then she started screaming things like that and my friend was there, Javier. I said, you know what, if I did this, I said, let's go to the police station right now. I said, let's go. And she said, whatever she said which was she said, well --." On this record, the court did not err, much less fundamentally err to Chavez-Tavena's prejudice in its initial ruling.

## IV. Claims of Prosecutorial Misconduct

¶13 Chavez-Tavena argues that the prosecutor repeatedly engaged in misconduct during trial and in closing arguments, denying him a fair trial. Chavez-Tavena failed to object on grounds of prosecutorial misconduct to any of the issues he raises on appeal, and accordingly bears the burden of establishing fundamental error resulting in prejudice. *See Henderson*, 210 Ariz. at 568 ¶ 22, 115 P.3d at 608. Chavez-Tavena has not met his burden.

¶14 "[P]rosecutorial misconduct 'is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial.'"

*State v. Aguilar*, 217 Ariz. 235, 238-39 ¶ 11, 172 P.3d 423, 426-27 (App. 2007) (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984)). To determine whether a prosecutor's remarks are improper, we consider whether the remarks called to the jurors' attention matters they would not be justified in considering, and the probability, under the circumstances, that the remarks influenced the jurors. *State v. Jones*, 197 Ariz. 290, 305 ¶ 37, 4 P.3d 345, 360 (2000). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335 ¶ 46, 160 P.3d 203, 214 (2007) (citation and internal punctuation omitted). "The misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (citation and internal punctuation omitted).

A.     Defiance of Evidentiary Rulings

¶15     The record fails to support Chavez-Tavena's argument that the prosecutor repeatedly defied the court's evidentiary rulings about what his wife heard on the recording. In fact, in each of the cited instances, the court overruled Chavez-Tavena's objections. The record also fails to support Chavez-Tavena's argument that the prosecutor engaged in misconduct by continuing, after the court sustained his objection, to question his wife on whether she believed Chavez-Tavena was under the influence the day of his arrest. The court sustained the initial objection on the ground that the prosecutor had not laid the necessary foundation, and the prosecutor's subsequent questions were an appropriate and ultimately successful attempt to overcome this objection. Chavez-Tavena's argument that the prosecutor had engaged in misconduct by asking leading questions on these issues is also misplaced. It was not impermissible for the prosecutor to ask leading questions to lay foundation for the testimony on these issues. *See* Ariz. R. Evid. 611(c); *State v. Hunter*, 5 Ariz. App. 112, 116-17, 423 P.2d 727, 731-32 (App. 1967).

B.     Undisclosed Other Acts

¶16     The cited record does not support Chavez-Tavena's argument that the prosecutor engaged in misconduct by eliciting undisclosed other acts that Chavez-Tavena had committed, specifically his prior assaults of his wife, and his threats after the charged molestation. Defense counsel opened the door to admission of prior assaults by noting in his opening statement that in an earlier attempt to get Chavez-Tavena out of the house, his wife had filed a domestic

violence complaint with police and told them that he had hit her. When the prosecutor objected that defense counsel was improperly referring to this and other undisclosed other acts, including the mother's supposed extramarital affairs, defense counsel noted, "all of this is going to come out. It's in the police report." Under these circumstances, the prosecutor's questioning about prior assaults was not improper. Nor was it fundamental, prejudicial error for the prosecutor to ask the wife about her contact with Chavez-Tavena after the incident and before he was arrested a month later, which prompted her to volunteer in part that during the time that Chavez-Tavena eluded police, he "would call me and continued to call me and threaten." *See State v. Rockwell*, 161 Ariz. 5, 11, 775 P.2d 1069, 1075 (1989) (holding unsolicited remark that defendant "started being rough with me" did not constitute fundamental error).

### C. Undisclosed Expert Opinion

¶17 The prosecutor did not engage in misconduct by asking one of his expert witnesses, a child-abuse pediatrician, why a perpetrator would not want to harm a child, without first disclosing the substance of the expert's testimony on this issue, or the studies upon which she relied for that testimony. At the time, defense counsel agreed that the question was appropriate as long as the prosecutor was able to lay sufficient foundation, and the court suggested the prosecutor "rephrase to ask her opinion based on her experience." The prosecutor rephrased the question, asking based on "your training and experience or even studies that exist," and the expert responded, "Well, causing pain and injury in the course of sexual abuse can lead to detection of a perpetrator and can lead to limited access or lack of further access to a child." Under these circumstances, the prosecutor did not engage in any misconduct.

### D. Attack on DNA Expert

¶18 The prosecutor's cross-examination of Chavez-Tavena's DNA expert did not rise to the level of intentional misconduct denying him a fair trial. The DNA expert had testified that the evidence was inconclusive as to the presence of sperm on the victim's underwear, but the small number of sperm heads reported would be consistent with the low number that arises during secondary transfer.

¶19 The question at issue on appeal followed the expert's admission that Chromosomal Labs, his employer, operates a website called CaughtHerCheating.com, to which customers would send underwear for testing to determine if a partner was having a sexual affair.

The prosecutor then asked:

> So on one hand, you're willing to allow people to submit underwear to your company, destroy their lives, destroy their families, destroy their livelihood, and you don't even take the time to say, hold up, caution, it could be secondary transfer, do you?

Chavez-Tavena did not object.

¶20         Impeachment of an expert witness by professional conduct inconsistent with trial testimony is appropriate. In this case, although the phrasing of the prosecutor's question could have arguably been viewed as disparagement of a witness, the expert's response minimized any prejudice from the phrasing of the question. The expert detailed the legal and factual distinctions between this case and the type of cases submitted to ascertain whether a partner was cheating. On this record, the prosecutor's question did not rise to the level of deliberate misconduct that denied Chavez-Tavena a fair trial.

### E.         Referring to Defense Counsel's Opening Statement

¶21         The prosecutor did not intentionally engage in improper conduct by asking the police officer who had impounded a belt from Chavez-Tavena the day of his arrest whether defense counsel was wrong when he purportedly said in his opening statement that Chavez-Tavena did not even own a belt. Defense counsel actually said in his opening statement that the State was going to claim a metal jangling sound on the recording was the sound of Chavez-Tavena taking off his belt, but that the evidence would show that he was not wearing a belt the day of the incident.

¶22         Statements by counsel in openings are not appropriate matters for cross-examination. *State v. Woods*, 141 Ariz. 446, 453-54, 687 P.2d 1021, 1028-29 (1984). In this case, however, just as in *Woods*, we conclude that the improper reference did not prejudice Chavez-Tavena. *See id*. When Chavez-Tavena objected on the ground that the prosecutor had misstated defense counsel's opening statement, the superior court instructed the jury "to recall that for themselves." The prosecutor's follow-up questions focused on the fact that Chavez-Tavena was wearing a belt when he was arrested, rather than defense counsel's opening statement. The court subsequently instructed the jury that what the lawyers said in opening statements and closing arguments was not

evidence, but might help them to understand the evidence. On this record, the prosecutor's reference to defense counsel's opening statement in his questioning of this officer did not constitute misconduct, much less deny Chavez-Tavena a fair trial.

> ### F.      Inquiry into Possession of Pornography

**¶23**      Nor did the prosecutor engage in misconduct by impeaching the credibility of Chavez-Tavena with regard to his denial that he enjoyed penile-anal sex (conduct that the victim accused him of forcing on her) by asking him if he had pornography in his bedroom that depicted penile-anal sex. Chavez-Tavena acknowledged that he did have such pornography in his bedroom. Arizona Rule of Evidence 608(b) permits impeachment of a witness through inquiry into specific instances. The question was not improper.

> ### G.      Vouching in Closing Argument

**¶24**      The record fails to support Chavez-Tavena's argument that the prosecutor engaged in vouching in closing argument by the repeated use of "we" or "I" or by ostensible references to his personal beliefs.

**¶25**      There are "two forms of impermissible prosecutorial vouching: 1) where the prosecutor places the prestige of the government behind its witness; [and] 2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. King*, 180 Ariz. 268, 276-77, 883 P.2d 1024, 1032-33 (1994) (citation omitted). This Court has reviewed the complained-of remarks, and concludes that, in context, the prosecutor's remarks did not constitute vouching. *See id.*

**¶26**      On this record, we conclude that the prosecutor did not engage in misconduct, much less misconduct that permeated the entire atmosphere of the trial or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Morris*, 215 Ariz. at 335 ¶ 46, 160 P.3d at 214.

## V.      Challenge to DCAC Enhancement

**¶27**      Chavez-Tavena argues that the superior court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) by enhancing his sentences for sexual conduct with a minor and molestation as Dangerous Crimes against Children (DCAC) pursuant to A.R.S. § 13-705 (A), (D), and (P)(1), based on a jury's finding that the victim was under the specified age,

without requiring the jury to find that he had targeted the victim. The superior court did not err.

¶28        For the DCAC enhancement to apply, "the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *State v. Williams*, 175 Ariz. 98, 103-04, 854 P.2d 131, 136-37 (1993); *see also* A.R.S. § 13-705 (A) (providing for life imprisonment for sexual conduct with a minor who is 12 or younger); A.R.S. § 13-705(P)(1) (defining dangerous crime against children as including molestation of a child and sexual conduct with a minor committed "against a minor who is under fifteen years of age"). The jury is not required to make an express finding that the conduct targeted a child to apply the DCAC enhancement, however, when targeting is inherent in the elements of the offense. *See Williams*, 175 Ariz. at 103-04, 854 P.2d at 136-37; *see also Blakely v. Washington*, 542 U.S. 296, 303 (2004) (interpreting *Apprendi* to allow a judge to impose a sentence greater than the statutory maximum only based on facts reflected in jury verdict, admitted by defendant, or submitted to jury).

¶29        As our supreme court has noted, as a practical matter, "[i]t is impossible to imagine how . . . molestation [and] sexual conduct . . . could be committed without targeting persons." *Williams*, 175 Ariz. at 104, 854 P.2d 137. The jury's verdict that Chavez-Tavena was guilty of molestation of a child under the age of 15 and five counts of sexual conduct with a minor under the age of 15, coupled with its finding that the victim of the sexual conduct counts was under 12 years of age, was sufficient to apply the DCAC enhancements. *See Williams*, 175 Ariz. at 103-04, 854 P.2d at 136-37; *Blakely*, 542 U.S. at 303.

## VI.    Conclusion

¶30        Chavez-Tavena's convictions and sentences are affirmed.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : gsh