[Criminal No. 907.   Filed October 15, 1941.]

[118 Pac. (2d) 88.]

# THE STATE OF ARIZONA, Appellee, v. L. C. TUTTLE, Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Appellee.

Mr. Stanley Samuelson and Mr. L. E. Canfil, for Appellant.

ROSS, J.—The defendant Tuttle was charged by information with murdering one Neuman Hill, on or about December 19, 1940, in Pinal county. From a conviction of murder in the first degree and a sentence of life imprisonment, he has appealed.

He specifies in his brief, as required by section 44–2515, Arizona Code 1939, as ground for appeal the court's order overruling his motion for a new trial. The grounds of such motion were that the verdict was (1) contrary to the law, (2) contrary to the evidence, and (3) that the court, in ruling upon the admissibility of evidence, commented thereon.

██ While grounds (1) and (2) are very general and indefinite, under subdivision (2) of section 44–2535, even in the absence of specifications, it is made the duty of the appellate (supreme) court to "review the evidence to determine if it is insufficient to support the judgment where this is a ground of appeal," and the court may do so whether it is made a ground of appeal or not. In the discharge of this duty, we have carefully examined the evidence and while, if we had been the jury, we might have given a lesser punishment, we do not feel that we can say such evidence "is insufficient to support the judgment." The jury saw and heard the witnesses and the picture developed before them was about as follows:

The homicide occurred on December 19, 1940, between 12:00 M. and 6:00 P. M. It was a chilly, rainy day. The scene of the crime was at a cotton pickers' camp on the Keys farm near Eloy, Pinal county.

This camp consisted of a number of tents, as one witness said, "stuck side by side." There were twelve or more pickers living in these tents, all of them of the negro race. The tent occupied by defendant had a stove and for that reason the pickers used it as a common meeting place to cook food and visit in. On the day mentioned, all the pickers, or about all of them, were in this tent. The deceased and three others were at a table playing a game of cards called "Dirty Hearts," and the others were talking and laughing. Mozee Owens was cooking peas and he and defendant got into a friendly argument in which it appears defendant insinuated that he had been furnishing the wood for the stove and the oil for the lamp. Owens told him "we all furnished wood there and cooked on the same stove." The matter of who furnished the wood and oil became a subject of more or less general discussion, when the deceased said: "You fellows hush arguing with that man (meaning defendant), don't be arguing with that fellow, because there's nothing to it." From this, the defendant and deceased exchanged some acrimonious remarks. Among other things, deceased said: "Here, don't you argue with me because I will knock the hell out of you," to which defendant said: "I would not do that if I were you." After this, deceased resumed his seat at the card game. A verbal sally between defendant and deceased ensued and defendant opened his pocket knife in his pocket, walked up beside deceased and stood there. The deceased excused himself from the card game, left the tent, went to his own tent and came right back, sat down on the side of the card table, picked up his cards and started to play again, and said to defendant: "What the hell you want to come over here and sit right beside me for? Why couldn't you stay over there where you was?" and started to move.

The defendant, without answering, "just struck him (deceased) a backhanded lick with the knife in his hand." The stab was in the upper right chest and proved fatal during the evening of that day.

The defense was self-defense. Defendant testified that deceased said:

" 'I guess I can make you shut up,' and rushed out. Well, when he rushed out I still set there, and he rushed back in and rushed up to me and said, 'What is that about I won't make you shut up?' with his hands in his pockets, and we went together."

While it was shown the deceased returned from his tent to the card game with a razor in his pocket, it appears he did not draw it from his pocket or attempt to use it. When defendant struck him with the knife, deceased knocked defendant down with his fists. The razor was later found on the floor of the tent.

No exception is taken to the court's instructions and there could be none. They were full and fair. The court defined all the degrees of homicide and submitted forms of verdict for each degree, with proper directions. It defined the law of self-defense, by one on his own premises, as follows:

" . . . you are instructed that when a person is assaulted in his own home by a person armed with a deadly weapon, and believes himself in danger of great bodily harm or believes that his life is in danger, he need not retreat, but may take human life to prevent such felonious attack, and the taking of human life under such circumstances is justifiable . . . and you must acquit defendant."

Those who see and hear the witnesses testify are in a much better position to weigh their testimony than we, and in passing on questions of fact are more apt to be correct than we. The jurors had an opportunity to observe the manner and conduct of the witnesses and by their verdict have said there was no necessity

for the defendant to take the deceased's life to protect his own, under the facts and circumstances submitted to them. And, as said in the forepart of this opinion, we cannot say the evidence was insufficient to support their verdict and the judgment.

Counsel in their argument under (1) and (2) make the complaint that the evidence fails to show defendant had any motive in taking the life of Neuman Hill. While proof of motive is always relevant, it is not essential. It is no element of the crime and becomes important only when the evidence, direct and circumstantial, fails to make out a satisfactory case. *Singh* v. *State,* 35 Ariz. 432, 280 Pac. 672, 67 A. L. R. 129; 14 Am. Jur. 786, sec. 27.

The contention that the court commented on the evidence, in violation of section 12, article VI of the Constitution, is based upon what the court said in overruling an objection by defendant to a question by the county attorney and may best be shown by giving the question, the objection and the language used by the court in its ruling, to wit:

"Q. The purpose of this tent was to give the boys some place to go to play and keep warm? A. Yes, sir.

"(Objection): Now I certainly am going to object to the conclusion of the county attorney in trying to establish his case here.

"The Court: Objection overruled. That was a community tent down there."

Upon a very similar state of facts, we have held that, when the court in ruling on the admission of evidence gives its reason therefor, it is not a comment on the evidence and violative of section 12, Article VI of the Constitution. In *Beasley* v. *State,* 20 Ariz. 237, 179 Pac. 647, 649, we said:

" . . . In the case at bar the remarks objected to were addressed to the counsel, and we do not think the provision of the Constitution quoted was intended to

prevent judges from giving counsel the reasons for their rulings upon questions concerning the admission or rejection of testimony. We do not, however, wish to be understood as holding that a judge, under this provision, is at liberty in addressing counsel to comment upon the facts in the presence of the jury in a way calculated to influence their verdict. Yet it is manifest from the language of the provision that its primary object was to prevent comments on the facts in giving instructions by which the jury are to be guided, and at a time when such comments would be likely to affect their minds. Strictly speaking, we do not think the remarks quoted really amount to a comment upon the facts. . . . ''

All the testimony is to the effect that this tent was used as a kind of community center. There is no controversy about that. The court's reference to this tent as ''a community tent'' was exactly what all the evidence showed it to be and, while the evidence showed defendant slept in such tent and the other cotton pickers in other tents nearby, it is to the effect that all of them visited it for the purposes above stated. The court merely stated a fact about which there was no dispute.

It appears that the defendant had a fair and impartial trial and, therefore, the judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.