628 P.2d 947
**STATE of Arizona, Appellant,**

v.

**John Calles MOYA, Jr., Appellee.**

No. 5159.

Supreme Court of Arizona,
En Banc.

April 30, 1981.
Rehearing Denied June 2, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellant.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellee.

HAYS, Justice.

The appellee, John Calles Moya, Jr., hereinafter referred to as defendant, was convicted by a jury of first degree murder on July 5, 1979. On July 13, defense counsel moved for a new trial pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 24.1 On September 24, the trial court denied the motion for new trial. After denying the motion, however, the trial court, assuming inherent power to modify the verdict, entered a judgment of acquittal on the charge of first degree murder and then entered a

judgment of guilty to the crime of second degree murder.

The state then brought a special action to this court, urging that the trial court exceeded its authority. In *State ex rel. Hyder v. Superior Court (Moya)*, 124 Ariz. 560, 606 P.2d 411 (1980), we held that there was no authority which allowed the trial court, on its own motion, to enter a judgment of acquittal after a jury verdict. We concluded by stating, "The judgments of September 24, 1979, are hereby vacated and this case is remanded for proceedings consistent with this opinion." *Id.* at 561, 606 P.2d at 412.

Upon remand, defense counsel, renewed the motion for new trial and the trial court entered its order granting the motion. The state now appeals this order. We accept jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(2).[1]

The question we must first decide is whether the trial court had jurisdiction to grant defendant's renewed motion for new trial.

The state vigorously asserts that once a motion for new trial has been denied, there is no authority which allows the trial court to rehear the motion and then grant it. Although our research reveals that there *is* authority which supports the trial court's actions in this instance, *see State v. Ornelas*, 15 Ariz.App. 580, 490 P.2d 25 (1971), we need not address this particular contention. Rather, the effect of our decision in *State ex rel. Hyder v. Superior Court (Moya)*, *supra*, was to return the case to the posture it was in on September 24, 1979, before the trial court ruled on defendant's motion for new trial. Since the motion for new trial was originally made in accordance with the provisions of rule 24.-

---

1. Although this appeal was originally brought before the Court of Appeals, Division One, the chief judge ordered the case transferred to this court, expressing the opinion that the Court of Appeals lacked jurisdiction under A.R.S. § 12–120.21. Section (A)(1) of that statute provides that the Court of Appeals shall have "[a]ppellate jurisdiction in all actions and proceedings . . ., except criminal actions involving crimes

for which a sentence of death or life imprisonment *has actually been imposed.*" (Emphasis added). *In the present case, no sentence has been imposed*; therefore, the Court of Appeals *did* have jurisdiction. We accept jurisdiction under Rule 47(e)(2), however, in order to clarify the effect of our decision in *State ex rel. Hyder v. Superior Court, supra*.

1(b), Rules of Criminal Procedure, the trial court was acting well within its authority under rule 24.1(a) by granting the motion.

Having determined that the trial court did have jurisdiction to grant the motion, we must next decide whether the court abused its discretion in ordering a new trial.

■ As we stated in *State v. Jones*, 120 Ariz. 556, 559, 587 P.2d 742, 745 (1978):

It is well settled that the decision to grant a new trial is within the sound discretion of the trial judge. *State v. Villalobos*, 114 Ariz. 392, 561 P.2d 313 (1977). It is equally well settled, however, that "[i]f an examination of the record discloses that no mistake of law or fact was made and that the evidence fully sustains the conviction, it is an abuse of discretion to grant a new trial."

In granting the motion for new trial, the trial judge expressed the opinion that, as a matter of law, there was insufficient evidence of premeditation to constitute a crime of murder in the first degree and that any finding of premeditation by the jury was necessarily based upon speculation and conjecture. We agree.

■ It is the duty of this court, under the circumstances, to review all of the evidence and to determine whether the state proved beyond a reasonable doubt that the crime of murder was committed with premeditation. *State v. Chase*, 78 Ariz. 240, 242, 278 P.2d 423, 424 (1954). In order to show premeditation, the state must prove that the defendant acted with either the intention or the knowledge that he would kill another human being, and that such intention or knowledge preceded the killing by a length of time to permit reflection. A.R.S § 13–1101(1). While the necessary premeditation prior to the act of killing may be as instantaneous as successive thoughts of the mind and may be proved by circumstantial evidence, premeditation still must be shown. *State v. Lacquey*, 117 Ariz. 231, 234, 571 P.2d 1027, 1030 (1977).

■ Our examination of the record for evidence of premeditation discloses the following. On December 7, 1978, the defendant directed the police to the apartment of Rueban Angel Nunez. Inside, the officers discovered the body of Nunez lying on a couch. The right side of his head had been crushed and a knife protruded from his chest. A profuse amount of blood was splattered on the wall next to the victim's head. The body's position on the couch suggested that he had been sleeping at the time of the killing. The weapon used to deliver the fatal blows to the head was apparently a tortilla skillet.

Defendant testified that while in the apartment, Nunez allegedly threatened defendant's father, brother, William Soltero, a labor union official, and the defendant. After making this threat, Nunez supposedly stated he was going to kill the defendant and proceeded to attack defendant with a knife. When defendant saw Nunez coming at him with the knife, defendant testified he attempted to run out the kitchen door but Nunez grabbed him by the hair and shoved him against a wall heater. Defendant, who had been drinking heavily during the preceding 24-hour period, had no recollection of any events after this initial attack. Although defendant did have burn marks on his back which were consistent with the heater grill pattern, there were no indications of any defensive knife wounds on either the defendant's or victim's hands or arms.

In support of the state's theory that the homicide was premeditated and unprovoked, the prosecution attempted to show that the circumstantial evidence was inconsistent with a fight having occurred. The crucial testimony in this regard was given by two expert witnesses for the state, Dr. Thomas Jarvis, a forensic pathologist, and Richard Watkins, a criminalist.

When asked whether he had an opinion as to the position of the victim at the time the fatal blows were struck, Dr. Jarvis replied in the affirmative and stated, "Based upon all of the evidence that you've heard, its my opinion that the body very well might have been lying on its right side on the couch at the time that the injuries were inflicted."

THE COURT: Counsel, one moment. The doctor stated "it might have been" which is in his own speculation from the way the question was answered. Is that the strongest you could make your opinion, doctor, that it "might have been"?

THE WITNESS: I think my answer was that it's entirely consistent with: The body might have been in that position at the time the blows were struck.

THE COURT: The objection will have to be sustained. The "might have been" is speculative. Anything might have been.

THE WITNESS: Well, it could have been. That's all I'm saying and the evidence supports.

Finally, after some considerable effort, the prosecutor was able to elicit the following statement:

[Dr. Jarvis]. In my opinion, the evidence supports the reasonable probability that the body was lying on its right side on that couch when it was injured.

The prosecution also attempted to show that the blood spatter pattern on the wall next to the victim's head indicated that Nunez had been struck while lying on the couch. Richard Watkins, the criminalist, testified on direct examination that the point of impact was in a generalized region near the armrest of the couch. On redirect, however, Watkins stated that the blood pattern appearing on the wall was not consistent with a spatter pattern adding, "... I would not be able to form a real definitive opinion on that." Watkins was also unable to form an opinion as to whether the blood patterns on the wall were consistent with an object, such as the tortilla skillet, repeatedly striking a blood source.

█ Based upon the foregoing testimony and our review of the evidence, we conclude that the state did not prove beyond a rea-

sonable doubt that this homicide was committed with premeditation. The trial court did not abuse its discretion in ordering a new trial.[2]

Affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C.J., and CAMERON and GORDON, JJ., concur.

---

**2.** We must add that defendant may not be prosecuted a second time for first-degree murder. Although the issue was not raised in the briefs, we note that the Double Jeopardy Clause bars the state from trying defendant a second time once the trial court or reviewing court has found the evidence legally insufficient to support the guilty verdict. *Hudson v. Louisiana,* —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).