664 P.2d 195

STATE of Arizona, Appellee,

v.

**Michael Allen HUNTER, Appellant.**

No. 5466.

Supreme Court of Arizona,
In Banc.

April 13, 1983.
Rehearing Denied May 24, 1983.

**46**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Division, Linda A. Akers Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, James R. Rummage, Deputy Public Defender, Phoenix, for appellant.

GORDON, Vice Chief Justice:

On October 27, 1981, appellant was found guilty of first degree murder in violation of A.R.S. § 13–1105, and unlawful use of a means of transportation in violation of A.R.S. § 13–1803. Appellant was sentenced to life without possibility of parole for 25 years for murder, and a term of 1.875 years for unlawful use of a means of transportation. Appellant challenges the murder conviction but not the unlawful use of a means of transportation conviction. This Court has jurisdiction under Ariz.Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4033. The judgment of conviction and sentence for murder is reversed and the case is remanded.

The victim in the instant case, Rondo Ray (Bill) Demint, was appellant's ex-father-in-law. On April 12, 1981, the day of the stabbing, appellant called the Demint home

saying he had some pictures for his ex-wife and asking if he could bring them over. Appellant arrived at the Demint home without any pictures. In a period of about an hour appellant excused himself to go to the bathroom three times, each time staying in the bathroom an unusually long time. The third time he went to the bathroom appellant called Bill Demint to the bathroom saying there was water on the floor from a broken faucet. Bill Demint hurried down the hall followed closely by his wife. When Mrs. Demint reached the bathroom a few seconds behind her husband she saw appellant hitting Bill Demint. Mrs. Demint ran back into the living room and got a gun from a desk drawer. She saw appellant emerging from the hallway and fired a shot in his direction. She then ran from the house, stationed herself where she could watch both doors of the house, and screamed to her neighbors to call the police. The police arrived and took Mrs. Demint to her neighbor's porch to find out what was happening.

In the meantime, appellant ran out the back door of the house. He climbed over the back yard fence and accosted several people on the street in an effort to get some car keys or a ride out of the neighborhood. He finally secured a set of keys and a car and sped out of the neighborhood. He was arrested without incident a few hours later.

When police entered the Demint home they found the victim in a pool of blood in the kitchen. The house showed signs of a struggle. There was a pair of scissors next to the body and a bloody hunting knife in the den. The police immediately seized the hunting knife but not the scissors. It was later determined that the victim had suffered several stab wounds, two of which would have been fatal. One was a chest wound apparently caused by a knife, and the other was an abdominal wound consistent with the pair of scissors.

As the police were concluding their investigation a friend of the family arrived at the house in order to clean it up before Mrs. Demint returned. With a police detective present, and with his permission, the friend picked up the scissors from beside the body, wiped them off with a towel, and put them on a kitchen counter. Several hours later the police determined that the scissors may have been significant, and a detective returned to the house and seized them.

At trial appellant claimed that he killed the victim in self defense. According to appellant, he brought a pair of scissors to the Demint home hoping to have Bill Demint sharpen them on his knife sharpening equipment. When he went to the bathroom the third time he found water on the floor, cleaned some of it up, and called Bill Demint. When Bill Demint got to the bathroom appellant handed him the scissors and asked him to sharpen them. Bill Demint took some apparently playful swipes at appellant with the scissors and appellant shoved him into the doorjamb. Bill Demint then yelled to his wife to get a gun. Appellant claims that he headed toward the living room but was forced back down the hall by Mrs. Demint threatening him with a gun. Appellant then heard Mrs. Demint leave the house and he went into the living room and tried to leave the house through the kitchen door. Bill Demint followed appellant and blocked his way out of the house. Bill Demint attacked appellant with the scissors and appellant defended himself with a knife he grabbed from a wall display. Appellant testified that he moved back into the living room and was shot at by Mrs. Demint who had re-entered the house. He then headed back down the hallway and into the den. He waited until Mrs. Demint left the house again and escaped through the kitchen and out the back door.

At trial appellant made a motion for a judgment of acquittal of first degree murder on the ground that the state failed to introduce sufficient evidence of premeditation. The motion was denied. Appellant now claims the denial of his motion was error.

█ Under Ariz.R.Crim.P. 20, a judgment of acquittal prior to verdict may be entered only if there is no substantial evidence to warrant a conviction. *State v. Clow*, 130 Ariz. 125, 634 P.2d 576 (1981).

Substantial evidence is evidence from which reasonable people could find the defendant guilty beyond a reasonable doubt. *State v. Franklin,* 130 Ariz. 291, 635 P.2d 1213 (1981). "A trial court should not grant a motion for judgment of acquittal 'if reasonable minds can differ on the inferences to be drawn from the evidence.' " *State v. Jimenez,* 130 Ariz. 138, 141, 634 P.2d 950, 953 (1981) (quoting from *State v. Superior Court,* 128 Ariz. 216, 223, 624 P.2d 1264, 1271 (1981)).

■ In the instant case appellant claims that there was not substantial evidence of premeditation. In a first degree murder prosecution the state must prove beyond a reasonable doubt that the killing was premeditated. *State v. Lacquey,* 117 Ariz. 231, 571 P.2d 1027 (1977); *see State v. Dickey,* 125 Ariz. 163, 608 P.2d 302 (1980).

"In order to show premeditation, the state must prove that the defendant acted with either the intention or the knowledge that he would kill * * *, and that such intention or knowledge preceeded the killing by a length of time to permit reflection."

*State v. Moya,* 129 Ariz. 64, 66, 628 P.2d 947, 949 (1981). The necessary premeditation may be as instantaneous as successive thoughts of the mind and may be proven by either direct or circumstantial evidence. *Id.; State v. Lacquey, supra.*

■ In the case at issue there was sufficient evidence from which the jury could find premeditation. There was evidence that about a year before the killing appellant, referring to the victim, said, "that fat bastard, I'm going to get him one of these days." The evidence further indicated that when appellant called the Demints on the day of the killing he gave as his reason for visiting that he had some pictures for his ex-wife. When he arrived he had no pictures with him. He did, however, bring the scissors which caused one of the victim's fatal wounds. After arriving at the Demint home appellant excused himself to go to the bathroom three times in a period of about an hour and stayed in the bathroom an unusually long time. While he was in the bathroom the third time appellant called the victim into the bathroom saying there was a broken faucet and water all over the floor. Mr. and Mrs. Demint hurried down the hall to the bathroom and when Mrs. Demint arrived, just seconds after her husband, appellant was striking Mr. Demint. After the stabbing, there was no indication of water on the floor and the plumbing was in perfect working order. This evidence could lead a reasonable person to infer that appellant decided to kill the victim, invented a pretext for visiting the Demints, secured a weapon, went to the Demints' home, lured Mr. Demint into the bathroom with a phony story about a water leak, and attacked and killed him. Consequently, the trial court was under no duty to grant appellant's motion for a judgment of acquittal.

At the state's request the trial court in the instant case instructed the jury as to flight or concealment. The judge gave RAJI 1.12 which provides:

"Running away or hiding after a crime has been committed does not in itself prove guilt. You may consider any evidence of the defendant's running away or hiding, together with all the other evidence."

Appellant's second claim of error involves this instruction. He argues that the giving of this instruction was error. We find that it was not.

Analytically, flight or concealment is viewed as an admission by conduct. This view is based on the notion that by fleeing the scene of a crime or by concealing oneself to avoid arrest, one manifests a consciousness of guilt. This consciousness of guilt, in turn, gives rise to an inference of actual guilt.

■ In determining whether a flight instruction is appropriate the evidence must be examined for the presence of either of two factors. First, the manner in which the accused left the scene is examined in order to determine whether it was indeed flight. *State v. Smith,* 113 Ariz. 298, 552 P.2d 1192 (1976). Leaving the scene is con-

sidered flight only if the manner of leaving suggests consciousness of guilt. *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); *State v. Smith, supra.* For example, running away from the scene as upon open pursuit, rather than walking, normally suggests consciousness of guilt. *State v. Lujan,* 124 Ariz. 365, 604 P.2d 629 (1979). If the manner of leaving the scene suggests consciousness of guilt then a flight instruction is proper. *Id.*

■ If the manner of leaving the scene does not suggest consciousness of guilt, or if there is no evidence of the manner of leaving the scene, then the evidence must be examined to determine whether the accused attempted to conceal himself or herself. *State v. Smith, supra.* If the evidence indicates concealment on the accused's part then a flight instruction is proper. *State v. Swinburne,* 116 Ariz. 403, 569 P.2d 833 (1977).

■ In the instant case, appellant ran out the back door of the Demint house after stabbing the victim. He climbed over the back yard fence, grabbed a woman who was walking across the yard of a nearby house and demanded her car keys. The woman told appellant that she did not have her keys with her and appellant released her and ran out into the street where he flagged down a passing truck. According to the driver of the truck, appellant said that the police were after him and tried to drag the driver out of the truck. The driver managed to pull the keys from the truck's ignition and escape from appellant's grasp. Appellant then ran up the street a short distance and entered a house. He grabbed a woman who was in the house and demanded her car keys. The woman gave appellant the keys to her car. Appellant went out to the car, backed it out of the driveway and sped out of the neighborhood. We find that this manner of leaving the scene of the stabbing manifests a consciousness of guilt on appellant's part. Consequently, a flight instruction was proper.

■ Appellant argues that he ran from the scene out of fear, not out of consciousness of guilt. The existence of an alternative explanation, appellant argues, precludes a flight instruction. We believe that 2 J. Wigmore, Evidence in Trials at Common Law (J. Chadbourn rev. 1979), accurately sets forth the significance of alternative explanations in flight cases:

"It has sometimes been said that an *unexplained* flight is the admissible evidence. But this is obviously unsound. The prosecution cannot be expected to negative beforehand all conceivable innocent explanations. The fact of flight is of itself significant; it becomes most significant when after all no explanation is forthcoming.

\* \* \* \* \* \*

"On the logical principle of *explanation* \* \* \*, the accused may always endeavor to destroy the adverse significance of his conduct by facts which indicate it to be equally or more consistent with such other hypothesis than that of a consciousness of guilt \* \* \*."

*Id.* § 276, at 129–30 (emphasis in original); cf. *Elson v. Alaska,* 659 P.2d 1195, 32 Crim. L.Rptr. (BNA), 2491 (Alaska 1983) (alternative explanation for resisting pat-down search goes to weight not admissibility of evidence).

■ Appellant also argues that because he did not attempt to conceal himself when, several hours after the stabbing, he was approached by police and arrested, the flight instruction should not have been given. As indicated above, however, either fleeing the scene as upon open pursuit or concealment is sufficient to support a flight instruction. It is not necessary that both factors be present.

Appellant's third claim of error involves a motive instruction. At the state's request the jury was instructed as follows:

"It is not necessary for the state to establish a motive for the defendant to commit the crime."

Appellant objected to the instruction and argues now that the giving of the instruction was error. We agree.

■ Motive is not an element of the crime of murder. *State v. Tuttle,* 58 Ariz. 116, 118 P.2d 88 (1941). Nonetheless, it is well settled that in a murder prosecution the presence or absence of motive is relevant.

"[T]he fact that the defendant had some motive, good or bad, for committing the crime is one of the circumstances which, together with other circumstances, may lead the fact-finder to conclude that he did in fact commit the crime; whereas lack of any discernible motive is a circumstance pointing in the direction of his innocence."

W. LaFave & A. Scott, Handbook on Criminal law § 29, at 208 (1972). *See State v. Tuttle,* 58 Ariz. at 120, 118 P.2d at 90 ("While proof of motive is always relevant, it is not essential"); *Antone v. State,* 49 Ariz. 168, 181, 65 P.2d 646, 651 (1937) ("We think the true rule is that it is always competent to show motive but that it is not essential"); *see also Pointer v. United States,* 151 U.S. 396, 414, 14 S.Ct. 410, 417, 38 L.Ed. 208, 216 (1894) ("The absence of evidence suggesting a motive for the commission of the crime charged is a circumstance in favor of the accused, to be given such weight as the jury deems proper * * * "). This is true whether the defendant denies the killing altogether, or admits the killing but claims it was in self defense or argues for a lesser degree of homicide. *Wakaksan v. United States,* 367 F.2d 639 (8th Cir.1966), *cert. denied,* 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); *People v. Arcega,* 32 Cal.3d 504, 651 P.2d 338, 186 Cal.Rptr. 94 (1982); *People v. Gonzales,* 87 Cal.App.2d 867, 198 P.2d 81 (1948). We are convinced, therefore, that a jury instruction to the effect that the state need not prove motive but motive or lack of motive is a circumstance that may be considered in determining guilt or innocence, should be given upon proper request. *See People v. Gibson,* 133 Cal.App.3d 780, 184 Cal.Rptr. 378 (1982); *State v. Brackett,* 55 N.C.App. 410, 285 S.E.2d 852, *rev'd on other grounds,* 306 N.C. 138, 291 S.E.2d 660 (1982); *State v. Osborne,* 18 Wash.App. 318, 569 P.2d 1176 (1977); *State v. Bowen,* 12 Wash.App. 604, 531 P.2d 837 (1975). To the extent that *Singh v. State,* 35 Ariz. 432, 280 P. 672 (1929), *State v. Eisenstein,* 72 Ariz. 320, 235 P.2d 1011 (1951), or *State v. Dante,* 25 Ariz.App. 150, 541 P.2d 941 (1975), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976), suggest otherwise they are overruled.

■ The instruction in the instant case informed the jury that the state was not required to prove motive. That is a correct statement of the law. It is, however, incomplete. The instruction did not inform the jury that motive was a circumstance it could consider in determining guilt or innocence. Because the instruction is incomplete, it has the potential to mislead the jury into thinking that motive or lack of motive is of no significance at all. Consequently, it is not a proper instruction and should not have been given. Cf. *State v. Curry,* 127 Ariz. 1, 617 P.2d 785 (App.1980) (instruction which is correct statement of law but is incomplete is improper).

■ Appellant also argues that it was error to refuse to instruct the jury that if it found that the state or any agent of the state allowed material evidence to be destroyed, then it could infer that the evidence would be against the interests of the state. This is a so-called *Willits* instruction. *See State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964). Appellant claims that he was entitled to such an instruction because detectives allowed a friend of the victim to pick up and wipe off the pair of scissors found near the body before the scissors could be analyzed for latent fingerprints. We agree that appellant was entitled to such an instruction.

"In *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964), this Court held that a similar instruction should have been given where potentially exculpatory evidence had been destroyed by the state. We have also held that an inference against the state is inappropriate where the destroyed evidence is of no evidentiary value whatsoever. *State v. Garrison,* 120 Ariz. 255, 585 P.2d 563 (1978)."

*State v. Watkins,* 126 Ariz. 293, 301, 614 P.2d 835, 843 (1980).

In the instant case there is no doubt that the police allowed the scissors to be handled in such a way that it was impossible to determine whether the victim's fingerprints were on them. Furthermore, the existence of and position of the victim's fingerprints on the scissors would have been important to appellant's case. If the victim's fingerprints had been found on the scissors it would have tended to corroborate appellant's claim that the victim attacked him with the scissors.

█ It is true, as the state argues, that the existence of the victim's fingerprints on the scissors would not have conclusively proven that appellant acted in self defense. To be entitled to a *Willits* instruction, however, an accused need not prove that evidence destroyed by the state would have conclusively established a defense. An accused need only show that "if the evidence had not been destroyed, it might have tended to exonerate [him or her]." *State v. Garrison,* 120 Ariz. at 259, 585 P.2d at 567.

Relying on *State v. Watkins, supra,* the state also argues that the destroyed evidence was of no evidentiary value whatsoever. In *Watkins* the appellant, charged with murder, claimed that the victim attacked him with a hammer and he was forced to kill in self defense. The police seized two hammers at the murder scene but failed to analyze them for fingerprints. This court held that the failure to process the hammers for fingerprints did not entitle the appellant to a *Willits* instruction because the existence of fingerprints on the hammers would have been of no evidentiary value.

In *Watkins* there were two reasons, neither of which are present in the case at issue, why the destroyed evidence would have been of no evidentiary value. First, there was uncontradicted evidence that the victim was holding one of the hammers in his hand earlier in the evening. Second, both hammers were found at the victim's house and presumably belonged there. The mere presence of the victim's fingerprints on the hammers would not have been unusual and would not have indicated that they were placed there during the incident resulting in the victim's death.

In the instant case, however, there is no evidence, other than appellant's testimony, that the victim ever handled the scissors. Furthermore, appellant first brought the scissors to the Demint home on the day of the killing. Unlike *Watkins,* if the victim's fingerprints were on the scissors they would have to have been placed there during the stabbing incident, as appellant claimed at trial. This is not a case in which the destroyed evidence was of no evidentiary value whatsoever.

█ Moreover, we cannot say the errors in this case were not prejudicial. Error is non-prejudicial if it can be said that the error, beyond a reasonable doubt, had no influence on the jury's verdict. *State v. McVay,* 127 Ariz. 450, 622 P.2d 9 (1980). The question is whether, absent the error, the appellate court can say beyond a reasonable doubt that the jury would have found the defendant guilty. *Id.*

█ In the case at issue the state concedes that appellant had no apparent motive to kill the victim. We cannot say that the improper instruction concerning motive did not mislead the jury into ignoring this fact when it may otherwise have considered it. Similarly, appellant's defense rested almost entirely on his own testimony. We cannot say that the inference authorized by the improperly refused *Willits* instruction would not have made the difference between the jury believing and disbelieving appellant's version of the stabbing.

The judgment of conviction and sentence for murder is reversed and the case is remanded for new trial.

HAYS, CAMERON and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice:

I concur in the result.