NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

JUAN CARLOS BRAVO,
JOHN CARMEN BRAVO-MARTINEZ,
JAIME BRAVO MARTINEZ, and
NESTOR MANUEL PONCIANO, *Appellees.*

Nos. 1 CA-CR 14-0253, 1 CA-CR 14-0257, 1 CA-CR 14-0262, 1 CA-CR 14-0263
(Consolidated)
FILED 10-15-15

Appeal from the Superior Court in Maricopa County
Nos. CR2013-002656-001, -003, -004, and -005
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Karen Kemper
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellee Juan Carlos Bravo*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellee John Carmen Bravo-Martinez*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellee Jaime Bravo Martinez*

Droban & Company, P.C., Anthem
By Kerrie M. Droban
*Counsel for Appellee Nestor Manuel Ponciano*

————————————————

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

————————————————

**P O R T L E Y,** Judge:

¶1        The State challenges the new trial the superior court granted to Juan Carlos Bravo, John Carmen Bravo-Martinez, Jaime Bravo Martinez, and Nestor Manuel Ponciano (collectively, "the Defendants") after the jury's verdict. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[1]**

¶2        A complaint about music being played too loudly at a late-night backyard party in west Phoenix escalated into a citywide police call for help resulting in the deployment of seventy officers, and the arrest of five people, all relatives,[2] on charges of riot; aggravated assault for touching with intent to injure, insult or provoke; and resisting arrest.

¶3        Officer M.L. testified that he went to the house and the homeowner refused to turn off the music and end the party. He stated that a crowd of partygoers massed at the front door, and quickly became hostile, using profanity and telling him to leave. One person at the front door, later identified as Ponciano, told the officer "he had a right to bear arms and he has guns," which the officer took as a threat. An unidentified partygoer then threw a cup of beer at the officer, and the group shut the door when the officer used pepper spray.

_____

[1] We view the trial evidence in the light most favorable to sustaining the jury's verdicts. *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2, 150 P.3d 769, 769 (App. 2007).
[2] The jury acquitted Maria Bravo Ponciano, the fifth relative, of rioting, but was unable to reach a verdict on aggravated assault and resisting arrest charges.

¶4            Officer M.L. and several others, who had responded to his call for backup, subsequently entered the backyard, where several of the thirty to forty attendees yelled and cursed at the officers, told them they had no right to be there, and refused to comply with commands to sit down or disperse.  In the resulting chaos, the four Defendants pushed various officers or threw items at them, resulting in their arrest and being charged.

¶5            The case went to trial.  Jaime Bravo Martinez, Nestor Manuel Ponciano, and Juan Carlos Bravo testified on their own behalf and denied the allegations.

¶6            Following a forty-three day trial, the jury convicted:  (a) Juan Carlos Bravo of aggravated assault for punching an officer; (b) Nestor Manuel Ponciano of aggravated assault for pushing an officer, and of resisting arrest; (c) Jaime Bravo Martinez of reasonable apprehension aggravated assault; and (d) John Carmen Bravo-Martinez of four counts of aggravated assault for throwing a jar at one officer and pushing others, one count of resisting arrest, and one count of rioting. All were for class 5 felonies, except for the resisting arrest convictions, which were class 6 felonies.

¶7            The Defendants asked for a new trial and, after briefing, the superior court granted their motion.  The State timely filed notices of appeal from the court's order.

¶8            The State subsequently moved to dismiss each of the cases without prejudice for purposes of appeal.  The superior court dismissed the case against each Defendant without prejudice.

## DISCUSSION

### I.      Effect of Dismissal of Underlying Cases

¶9            Juan Carlos Bravo argues the dismissal of the underlying case deprives this court of jurisdiction and renders this appeal moot.  We disagree.

¶10           The right to appeal can only be given or denied by constitution or statute. *State v. Birmingham*, 96 Ariz. 109, 111, 392 P.2d 775, 776 (1964).  Here, the State has a statutory right to appeal from the superior court's grant of the motions for new trial.  Ariz. Rev. Stat. ("A.R.S.") § 13-4032(2); *Birmingham*, 96 Ariz. at 111, 392 P.2d at 776.  Although the State did not need to dismiss the action before filing its appeal, an action we hope is not replicated, the constitution does not prohibit the procedure followed by the State.  *See State v. Million*, 120 Ariz. 10, 14-16, 583 P.2d 897, 901-903 (1978).  As a result, we conclude we have jurisdiction over the

State's appeal regardless of whether the case has been stayed or dismissed pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4032(2).

¶11        The Defendants argue the case is over because the State successfully asked that the charges be dismissed without prejudice. We disagree. Although the State dismissed the case without prejudice, if we were to find that the court erred, the effect would be to "return the case to the posture it was in . . . before the trial court ruled on defendant's motion for new trial." *State v. Moya*, 129 Ariz. 64, 65, 628 P.2d 947, 948 (1981). Similarly, the United States Supreme Court stated that if the State was successful on appeal, it would result "in the reinstatement of the general finding[s] of guilty, rather than in further factual proceedings relating to guilt or innocence." *United States v. Morrison*, 429 U.S. 1, 3-4 (1976); *see State v. West*, 226 Ariz. 559, 562, ¶ 13, 250 P.3d 1188, 1191 (2011) (stating that if the ruling is reversed on appeal, "the verdict of guilt can simply be reinstated").

¶12        On the other hand, if we find the court did not abuse its discretion in granting the motion for new trial, we would simply affirm and remand the case back for the new trial. The State does not need to reindict the Defendants and start anew because we are leaving the parties in the same position they were when the State erroneously thought it had to dismiss the charges to challenge the court's ruling. Consequently, the appeal is not moot and we will consider the merits. *See Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5, 277 P.3d 811, 814 (App. 2012) ("[W]e will dismiss an appeal as moot when our action as a reviewing court will have no effect on the parties.").

## II.    Grant of New Trial

¶13        The superior court granted the Defendants' motions for new trial. The court found that admission of evidence of the gun found on Juan Carlos Bravo was prejudicial and the cumulative impact of misstatements of evidence by the prosecutor throughout trial and during rebuttal argument, against a backdrop of "due process rights violations under the rationale of victims' rights protections," persuaded the court that the trial was neither fair nor constitutionally valid, requiring a new trial. Because of the length of the trial, however, the court "focused far more on a global consideration of the trial," noting that, "[f]rom that, there remains the lingering question as to whether the trial, as conducted, was fair and consistent with the due process rights of each defendant . . . [t]his Court cannot envision a circumstance wherein a reviewing court could find that the trial in this matter was fair and constitutionally valid." The court then announced it would set oral argument prior to the new trial "on the Rule 403 issues relating [to] the confiscated and previously admitted guns."

**¶14** The State argues the superior court abused its discretion by granting the Defendants a new trial because the refusal of the police-officer victims to be interviewed by the Defendants did not infringe upon the Defendants' due process rights. The State also argues the misstatements identified by the superior court during the prosecutor's rebuttal argument were not misstatements at all, and, in any case, were unintentional.

### A. Standard of Review

**¶15** Arizona Rules of Criminal Procedure ("Rule") 24.1(c)(5) provides that a trial court may grant a new trial if "[f]or any other reason not due to the defendant's own fault the defendant has not received a fair and impartial trial . . . ." In fact, our supreme court has stated that "[m]isconduct alone will not cause a reversal, as a new trial should not be granted to punish counsel for his misdeeds, but [only] where the defendant has been denied a fair trial as a result of the actions of counsel . . . ." *State v. Moore*, 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972). For example, a new trial will be warranted where a prosecutor's improper remark calls to the jury's attention a matter "that they would not be justified in considering in determining their verdict" and it must be probable that the remark influenced the jury's verdict. *State v. Hansen*, 156 Ariz. 291, 296-97, 751 P.2d 951, 956-57 (1988). As a result, because the trial court is in the best position to determine whether an attorney's remarks require a mistrial, or a new trial, we will not disturb the ruling absent an abuse of discretion. *See id.* at 297, 751 P.2d at 957. And we are mindful that the trial court has broad discretion to grant a new trial, and the appellant, in this case, the State, bears the burden of establishing that the record shows the court acted arbitrarily. *State v. Villalobos*, 114 Ariz. 392, 394, 561 P.2d 313, 315 (1977).

**¶16** Moreover, if a motion for "new trial was granted on one or both of the grounds . . . the fact that it was incorrect on [one or] the other ground is immaterial." *State v. Turner*, 92 Ariz. 214, 217, 375 P.2d 567, 568 (1962) (citing *State v. White*, 56 Ariz. 189, 191, 106 P.2d 508, 509 (1940)). Consequently, we will affirm the grant of new trial unless the State demonstrates the court acted arbitrarily. *Villalobos*, 114 Ariz. at 394, 561 P.2d at 315; *cf. State v. Harrington*, 27 Ariz. App. 663, 664, 558 P.2d 28, 29 (App. 1976) (stating that when trial court does not specify on which ground or combination of grounds it relied on in granting the motion, State has burden to demonstrate that none of the grounds urged in the motion for new trial are valid).

### B. Police Officers as Victims

**¶17** The superior court found that the Defendants' due process rights were violated by the "surprise nature of certain testimony" from the police-officer victims. Specifically, Defendants claimed the police-officer victims authored

reports that only discussed what they did and saw, but not the actions of the other officers. Moreover, the police-officer victims refused to participate in defense interviews. In its ruling, the court noted that "there was a significant amount of relevant information testified to by various officers that was not included in police reports, despite being central to the [S]tate's theory of the case." And the court expressed concern that "the exercise of victims' rights in this matter served to deny each defendant a fair trial."

¶18        Police officers can be victims under the Victims' Bill of Rights. *See* Ariz. Const. art. 2, § 2.1. A victim is defined as "a person against whom the criminal offense has been committed . . . ." Ariz. Const. art. 2, § 2.1(C). And like other victims, the officer-victims had the right to the protections of the Victims' Bill of Rights, including the right to refuse defense interviews or discovery requests. Ariz. Const. art. 2, § 2.1(5); A.R.S. § 13-4433(A); *Douglass v. State*, 219 Ariz. 152, 154, ¶ 9, 195 P.3d 189, 191 (App. 2008). Although they have certain rights as victims, those rights may, under certain circumstances, be required to yield to a defendant's due process rights. *See, e.g., State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 238-40, 836 P.2d 445, 451-53 (App. 1992) (holding that if medical records are found to be exculpatory and essential to present defense case or impeach the victim, due process requires their production).

¶19        Defendants have no constitutional right to pretrial discovery in a criminal case, except when the evidence is both exculpatory and material. *See Roper*, 172 Ariz. at 238, 836 P.2d at 451 (citations omitted); *see also State v. Connor*, 215 Ariz. 553, 560-61, ¶ 21, 161 P.3d 596, 603-04 (App. 2007) (citations omitted). Rule 15.1 governs disclosure by the State and requires the prosecutor to disclose the police reports in his or her possession or control. Ariz. R. Crim. P. 15.1. However, Rule 15.1 does not regulate what the police officers write or include in the reports. In fact, police officers are not required to prepare reports, much less reports that cover every aspect of their anticipated testimony. The purpose of the police report is to outline what happened in order to help the prosecutors determine what charges to file. Once the charges are filed, the report is provided to the defense to understand how the police perceived the events. *See State v. Seymour*, 21 Ariz. App. 144, 146, 517 P.2d 102, 104 (App. 1973). The defense can also use the report to attempt to impeach the officers during trial if their testimony is inconsistent with any police report. *See State v. Ashton*, 95 Ariz. 37, 39, 386 P.2d 83, 84-85 (1963); *State v. Preciado*, 15 Ariz. App. 114, 116-17, 486 P.2d 226, 228-29 (App. 1971). And, if need be, the report can also be used by the officer at trial to refresh his or her memory given that the report is written soon after the events and any trial takes place months or years later. Ariz. R. Evid. 803(5); *State v. Smith*, 215 Ariz. 221, 229, ¶ 29, 159 P.3d 531, 539 (2007).

¶20　　　Under the circumstances presented here, the Defendants' due process rights were not violated because they could not interview the police-officer victims. And the record fails to demonstrate that any of the undisclosed evidence in this case was material or exculpatory. During trial, and to address the fact that the police-officer victims did not provide defense interviews, the court gave the Defendants "expansive cross examination" of the officer-victims to address discrepancies between what they had included and had not included in their incident reports. As a result, the Defendants, during cross-examination, were able to use many omissions or misstatements in the reports of the officer-victims to question their credibility, and to present a complete defense. Consequently, having reviewed the record, the Defendants' due process rights were not violated nor were they denied a fair trial because the police reports did not cover all aspects of the police-officer victims' anticipated testimony or because the officer-victims did not agree to defense interviews.

### C.　Argument that Cross-Examination was Harassment

¶21　　　In reviewing the record, we find another issue concerning victims' rights that the court did not address: the prosecutor's use of the victims' rights as a sword during re-direct examination. During re-direct examination of Officer A.O., the prosecutor implied that defense counsel, by the extensive cross-examination, had violated the officers' rights, as victims, to be free from intimidation and harassment. The Defendants objected moved for a mistrial. After finding that the prosecutor's conduct had been improper, the court concluded that a mistrial was not warranted because the objection was immediately raised and the jury removed from the courtroom, preventing any unfair prejudice.

¶22　　　Victims are to be "treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. 2, § 2.1(A)(1). The officer-victims, however, are not typical crime victims. Although police officers may become crime victims in the course of carrying out their duty, they also have an obligation, as part of their duty, to observe and collect evidence and then to testify about it, if required. And as a witness to the events, they can be cross-examined, even vigorously, about what they saw, what they heard, and what they did, as well as other relevant inquiry in an attempt to get all the relevant information to the jury for its consideration.

¶23　　　Here, although the court sustained the objection to the prosecutor's statements, the implication that the cross-examination was improper and violated victims' rights was both unprofessional and misstated the law — if an officer-victim refuses to be interviewed by the defense, the defense can cross-examine the officer-victim about his or her direct testimony and anything else that is relevant,

and that touches on the person's credibility and other factors, which may create reasonable doubt. If a lawyer thinks a question or some part of the cross-examination is problematic, an objection can be made, and the court will resolve the objection. But, a prosecutor, in seeking justice, should never imply that the cross-examination of a police officer, even as a victim, was improper because of the impact it can have on the jury.

### D. Bravo's Gun.

¶24       We next turn to the prosecutor's use of Juan Carlos Bravo's gun and the court's analysis in granting the motion for new trial. Bravo was not charged with any offense relating to his gun or the use of his gun during the incident. Moreover, no one testified that Bravo brandished the gun or told police that he had one before he was arrested.[3] It was only sometime after Bravo was arrested and handcuffed, that an officer noticed a handgun sticking out of his waistband in plain view and seized it.

¶25       Bravo moved to preclude the admission of his gun. In response, the State conceded that the gun did not figure in any charges, but argued that it was relevant to the state of mind of the officers, "the reason why most officers reacted the way they reacted, did the things they did and took the safety precautions that they did was, the very reason was because there was talk about guns, threats with guns." The court found that the gun was relevant to whether the actions of the police were reasonable and that unfair prejudice did not substantially outweigh its probative value and denied Bravo's motion.

¶26       The prosecutor did not, however, just question the witnesses about finding Bravo's gun after his arrest. Instead, the prosecutor asked questions about the presence of guns and children at a late-night party, which generated numerous questions from the jury about who had guns, why and whether they usually carried them. The questions prompted an unsuccessful motion for mistrial, and

---

[3] The State had charged Ponciano with aggravated assault for allegedly threatening Officer T.B. with a gun, and evidence of his gun was admitted without objection. The officer testified that while he was standing on a wall looking into the backyard, Ponciano told him he had a gun and he could shoot the officer for trespassing, and reached under his shirt as if to get his gun. Officer B.M., who helped Officer T.B. arrest Ponciano, however, testified that he learned of Ponciano's handgun and retrieved it from his waistband only because Ponciano informed him of its presence as he was being led away in handcuffs. The jury acquitted Ponciano of the aggravated assault charge based on threatening Officer T.B. with the gun.

led to a stipulation that no evidence was introduced showing that John Carmen Bravo-Martinez had a gun. The court also instructed the jury that it is legal to carry a concealed firearm in Arizona, and the law does not require anyone to give a reason justifying the decision to carry a weapon.

¶27        In resolving the motion for new trial, the superior court found that the prosecutor's use of Bravo's gun, that was only discovered after he was arrested, created undue prejudice because the prosecutor misused the gun evidence to inflame the jurors' passions, particularly in rebuttal closing, and tainted all Defendants and contributed to doubts about the fairness of the trial. Based on the record, and the absence of evidence that the court acted arbitrarily, we cannot say that the court abused its discretion in concluding in hindsight that the prosecutor's use of the admission of Bravo's gun created unfair prejudice which warranted a new trial.

### E. Misstatements and Mischaracterizations of Evidence

¶28        The superior court also found that the numerous "misstatements and mischaracterizations" of evidence by the prosecutor during trial and in closing arguments deprived Defendants of a fair trial. For example, the prosecutor's use of the gun evidence in closing arguments was misleading. In her initial closing argument, the prosecutor ended her summation of the evidence supporting the charges against Juan Carlos Bravo by noting that he was found in possession of "[t]his handgun" after he was arrested, notwithstanding the fact that he had not been not charged with any offense involving a handgun. The superior court, in its new trial ruling, noted that the prosecutor also improperly suggested in rebuttal argument that Bravo's gun was "actually part of the aggravated assault" charge.

¶29        The court's finding that the prosecutor used the gun in rebuttal argument to demonstrate conduct that "was not supported by the evidence" and "appeared designed to feed into the passions of the jurors" was also justified. Insofar as the trial record shows, the prosecutor picked up the gun seized from Bravo and the one seized from Ponciano, and referred to the "charges" involving guns and the use of the guns to threaten officers; ostensibly, referring to the charges against Ponciano for allegedly reaching for a gun, and against Maria Bravo, for allegedly attempting to seize an officer's gun. The prosecutor also apparently gestured with one of the guns to indicate — contrary to the evidence — that it was actually pointed at an officer. The judge sustained an objection at the time, and cautioned the prosecutor at a bench conference that her argument was crossing the line on an issue "that's been very closely scrutinized to begin with. So I'd like you to really be careful sticking with the facts about the guns," noting that both her argument and her demonstration were misleading.

¶30    Given the court's role as the "thirteenth juror" when resolving a motion for new trial, the court's findings are supported by the record. *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 23, 961 P.2d 449, 453 (1998) (quotes omitted). As a result, we cannot say that the court abused its discretion in concluding that the prosecutor's arguments about Bravo's gun tainted all of the Defendants and contributed to the necessity for a new trial.

¶31    In granting the motion for new trial, the superior court also considered the fifteen objections to the prosecutor's rebuttal argument that were sustained on various grounds, including misstatement of the evidence. The chart the State included in its opening brief identifying the evidence at trial supporting each of the identified arguments is not persuasive. In some cases, the chart misstates what the prosecutor said that gave rise to the objection; in others, the chart cites inapposite evidentiary support; and in others, it takes objections out of context and ignores the court's explanations, when offered, of why the court found the arguments objectionable. In all but two instances, which were insignificant, cited by the judge, the record confirms that the prosecutor misstated or misused the evidence. Having reviewed the entire record, including the objections to the prosecutor's questions and arguments, and mindful of our discretionary review, we conclude that the court acted within its discretion in sustaining the objections.

¶32    We further conclude that the large number of misstatements and misuse of evidence, as well as the improper questions and argument, deprived the Defendants of a fair trial, notwithstanding the superior court's finding that the prosecutor did not intentionally engage in misconduct. If the court had found the conduct was intentional prosecutorial misconduct, double jeopardy would have prevented a retrial; but it is not necessary to apply the cumulative error doctrine because it is the impact of the conduct on the jury, rather than the intention of the prosecutor, that is at issue. *See Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (1984) (double jeopardy bars retrial if mistrial was caused by the prosecutor's intentional misconduct); *cf. State v. Hughes*, 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (cumulative error doctrine is recognized in context of prosecutorial misconduct because "a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.").[4]    And although the judge twice instructed the jury that the attorneys' arguments were not evidence, and found that the prosecutor did not intentionally misstate the evidence, the judge did not abuse his discretion in concluding that the misstatements had a "cumulative impact on the jury," because "when objectionable questions or misstatements are

---

[4] Moreover, "[t]he law cannot reward ignorance; there must be a point at which lawyers are conclusively presumed to know what is proper and what is not." *Pool*, 139 Ariz. at 107, 677 P.2d at 270.

repeated over and over again," particularly in rebuttal argument, sustaining objections and instructing the jury "has a less curative effect."

**CONCLUSION**

¶**33** Based on the foregoing, we affirm the order granting a new trial for the four Appellees.

