NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

VINCENTE GONZALES VALLES, SR., *Appellant*.

No. 1 CA-CR 17-0263
FILED 4-3-2018

Appeal from the Superior Court in Maricopa County
No. CR 2016-005892-002
The Honorable Dean M. Fink, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Nicole Farnum, Attorney at Law, Phoenix
By Nicole T. Countryman
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Peter B. Swann joined.

_____

**B E E N E**, Judge:

¶1         Vincente Valles Sr. ("Valles") appeals his criminal convictions and sentences, arguing the superior court erred in giving the jury a flight instruction and in sentencing him to flat time for his attempted first degree burglary conviction.   For the following reasons, we affirm Valles's convictions and modify his sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2         In October 2015, M.A. and his wife were arguing loudly outside of their residence about the placement of a Halloween decoration. Valles and his son, Vincente Jr., were walking by on the street when Valles "[w]olf whistle[d]" and made a sexual remark to M.A.'s wife.   M.A. confronted Valles and told him "[i]n colorful words" to "move along." Valles then said, "I know where you live.  I'll come back and get you and I'll kill your family."  Valles, who had distinct facial tattoos, stated he was part of the "LVL" gang.  M.A. indicated that he was not impressed by Valles's gang affiliation and told him to "get on down the road," after which Valles slowly walked away.

¶3         Immediately following the incident, M.A. retrieved a gun from his bedroom and put it on a counter near the front door.  M.A. took Valles's threat "serious for a little bit," but decided to go to a nearby market for cigarettes after Valles failed to return after a few minutes.

¶4         Upon returning home, Valles and Vincente Jr. were met by Valles's other son, Frankie.  Valles and Vincente Jr. were "upset" because M.A. "disrespected" them, and they "wanted to show the guy." Valles told Frankie that M.A. had "pulled a gun on him."  Other LVL gang members began to amass after Valles said to "get everyone, gather everyone to go handle this person."

¶5         As M.A. returned home from the market he noticed "six to eight" people gathered near his house.  After M.A. parked his truck, one of Valles's companions picked up a brick as three or four other individuals ran

2

towards M.A.'s front door. M.A. ran into his house and held the security door closed, but eventually the door was ripped from his hands. While at the door, Valles said, "I'm the wrong motherfucker to pull a gun out on."

¶6        Fearing for his safety, M.A. reached for his gun and as he did he was shot in the leg and fell to the floor. At least seven additional shots were fired toward the house, two hitting M.A.'s leg and side. M.A. returned fire while on the ground, scattering Valles and his fellow gang members in "all directions." M.A.'s wife then called 9-1-1.

¶7        Valles was shot in the left bicep and left buttock. He ran around the street corner and "started falling forward . . . in pain." Valles told everyone that he did not want to call the police or go to the hospital. Not long after, Valles was convinced to go to the hospital, and Valles's girlfriend drove him there.

¶8        A detective spoke with Valles at the hospital on the night of the shooting. Valles was "very vague about what happened." He said someone walked up and shot him, but later said the shooter was in a car. He was unable to provide a description of the person that shot him. Valles spoke with another detective and told him that he did not remember having an altercation with M.A., was shot by "some guy . . . acting crazy and shooting," and "didn't remember what he looked like."

¶9        Police executed a search warrant on Valles's house and found numerous gang-related photographs, clothing, and writings. The State charged Valles with the following: participating in a criminal street gang (count 1); attempt to commit burglary in the first degree (count 3); assisting a criminal street gang (count 4); and threatening or intimidating to promote, further, or assist a criminal street gang (counts 2 and 5).[1]

¶10        Jurors convicted Valles as charged on counts 1, 3, 4, and 5, and of a lesser-included offense of threatening or intimidating on count 2. The jurors also found several aggravating circumstances and that count 3 was a dangerous offense. The superior court determined that Valles had four historical prior felony convictions and imposed presumptive, concurrent sentences, the longest of which was 20.75 years in prison. Valles timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the

---

[1]        Count 5 was originally Count 11 in the initial indictment. However, the parties filed a stipulation for purposes of Valles's jury trial that renumbered Count 11 as Count 5.

Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### I.      Giving the Jury a Flight Instruction Was Harmless

**¶11**          Valles first argues that the superior court erred by giving the jury a flight instruction. We review the decision of whether to give a jury instruction for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 566, ¶ 90 (2014). "We defer to the trial judge's assessment of the evidence." *State v. Wall*, 212 Ariz. 1, 5, ¶ 23 (2006). The court determines whether a flight instruction is proper by examining the evidence for "the manner in which the accused left the scene . . . [which] is considered flight only if the manner of leaving suggests consciousness of guilt." *State v. Hunter*, 136 Ariz. 45, 48–49 (1983) (citations omitted).

**¶12**          Given the considerable evidence against Valles, we need not determine whether providing a flight instruction constituted fundamental error. *See State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008) ("Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict."). Even assuming the superior court erred in giving the flight instruction, such error was harmless and not prejudicial.

**¶13**          Here, we are convinced beyond a reasonable doubt that the instruction did not contribute to or affect the verdict. First, substantial evidence presented at trial supports Valles's convictions. Valles threatened to kill M.A. and then led a group of fellow LVL gang members to M.A.'s house. After chasing M.A. into his house, Valles and several of his fellow gang members attempted to enter M.A.'s home and eventually a gang member shot M.A.

**¶14**          Also, neither attorney made statements to the jury concerning the flight instruction. *See State v. Solis*, 236 Ariz. 285, 288, ¶ 14 (App. 2014) (holding that we must, "in considering whether an instruction is harmless error . . . consider the attorneys' statements to the jury."); *see also State v. Valverde*, 220 Ariz. 582, 586, ¶ 16 (2009) ("In assessing the impact of an erroneous instruction, we also consider the attorneys' statements to the jury."). Considering the overwhelming evidence against Valles and the lack of attorney statements concerning the flight instruction, we find that even if giving the flight instruction was error, it was harmless and not prejudicial.

## II.    The Court Erred in Ordering a Flat Sentence for Count 3

¶15    Valles argues that the court erred in imposing a flat sentence for his conviction of the dangerous offense of attempted burglary in the first degree. The State concedes this error; however, it disagrees with Valles that the case must therefore be remanded for resentencing.

¶16    We review *de novo* whether the superior court correctly applied sentencing statutes. *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5 (App. 2007). Because Valles did not raise this issue at his sentencing hearing, we review his claims only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* ¶ 20.

¶17    "The failure to impose a sentence in conformity with mandatory sentencing statutes makes the resulting sentence illegal," *State v. Carbajal*, 184 Ariz. 117, 118 (App. 1995), and the "[i]mposition of an illegal sentence constitutes fundamental error," *State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2002); *State v. McDonagh*, 232 Ariz. 247, 249, ¶ 7 (App. 2013). "[I]f an illegal sentence has been imposed upon a lawful verdict or finding of guilty by the trial court, the [appellate] court shall correct the sentence to correspond to the verdict or finding. The sentence as corrected shall be enforced by the court from which the appeal was taken." A.R.S. § 13-4037(A).

¶18    Here, Valles was convicted of count 3, felony attempted burglary in the first degree. A.R.S. §§ 13-1001(C)(2), -1508(A). The jury found it to be a dangerous offense and found that Valles committed the offense with the intent to promote, further, or assist criminal conduct by a criminal street gang. The court sentenced Valles as a dangerous offender and enhanced the sentence on this count by 5 years to 12.5 years' incarceration with 7.5 years to be served as "flat time or calendar time." A.R.S. §§ 13-704, -714.

¶19    Under A.R.S. § 13-704(G), however, a person sentenced for a dangerous offense "is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis . . . until the sentence imposed by the court has been served, the person is eligible for release pursuant to section 41-1604.07 or the sentence is commuted." Pursuant to A.R.S. § 41-1604.07(A), "each prisoner who is in the eligible earned release credit class shall be allowed an earned release credit of one day for every six days served . . . except for those prisoners who are sentenced to serve

the full term of imprisonment imposed by the court." Because this statute governs a prisoner's eligibility to receive earned release credits, sentencing from a court cannot deviate from the language of the statute. *See In re Webb*, 150 Ariz. 293, 294 (1986) ("Courts have power to impose sentences only as authorized by statute and within the limits set by the legislature."). Thus, the superior court inappropriately sentenced Valles to "flat time or calendar time" in contradiction of his ability to earn release credit under A.R.S. § 41-1604.07.

**¶20** Therefore, we modify Valles's sentence on count 3, removing the reference to "flat time or calendar time," allowing him to earn release credit under A.R.S. § 41-1604.07. We further correct the sentencing minute entry and the order of confinement to reflect this change. A.R.S. § 13-4037(A).

## CONCLUSION

**¶21** For the foregoing reasons, we affirm Valles's convictions and sentences as modified in this decision.

